Filed 8/30/23  In re A.P. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.P., A Person Coming Under the Juvenile Court Law. | |
| | D082003 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J520010C) |
| Plaintiff and Respondent, | |
| v. | |
| R.E., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Marissa A. Bejarano, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Senior Deputy County Counsel, for Plaintiff and Respondent.

R.E. (Mother) appeals the juvenile court's order terminating her parental rights to her minor son, A.P., under Welfare and Institutions Code[1] section 366.26. The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) failed to conduct an adequate section 224.2, subdivision (b) initial inquiry into A.P.'s possible status as an "Indian child" under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). Specifically, Mother contends that the Agency failed to ask B.P.'s (alleged father's) family members about potential Native American ancestry and that this was prejudicial error. The Agency asserts it had no duty to inquire of alleged father's relatives because alleged father was not a "parent" under ICWA. We agree with the Agency, conclude there was no error, and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2022, the Agency petitioned the juvenile court under section 300, subdivision (b)(1) on behalf of newborn A.P., alleging that he was at substantial risk of serious physical harm because of Mother's substance abuse. The Agency alleged that A.P. tested positive for fentanyl at birth, Mother admitted using drugs during pregnancy, and she tested positive the day before A.P.'s birth.

According to the Agency's detention report, the Agency interviewed Mother in July 2022, and she denied having any Native American ancestry. Maternal grandmother and maternal great-grandmother also denied Native American ancestry. The report noted that the Agency made efforts to engage with alleged father but that he "ha[d] not made himself available to the Agency." In July 2022, for example, the Agency reached alleged father by

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

phone and scheduled an appointment with him, but he failed to show. About a week later, the Agency again called alleged father, who expressed that he could not talk at that time. Although the Agency asked that he promise to call back later that day, he did not.

The following month, alleged father denied having any Native American ancestry. Despite the Agency's efforts, he also declined to provide various information and stated that "he did not want to be involved as he was not sure the baby was his."

At the August 15, 2022 detention hearing, alleged father answered the phone but hung up before the hearing began. Mother appeared telephonically and again denied having any Native American ancestry.

The Agency also conducted inquiries with maternal grandfather and maternal uncle Ru.E, both of whom denied Native American ancestry. Although Ru.E. reported a small percentage of Native American ancestry discovered through a DNA test, he denied knowing the tribe name or having family associated with a reservation. The Agency attempted to contact maternal uncle M.M. but did not receive a call back.

In late August 2022, the Agency invited alleged father to join a Child Family Team Meeting, but he responded that he did not " 'want anything to do with this.' " The Agency later conducted a parent search for alleged father, sent certified letters to the addresses associated with his name, and filed a declaration of due diligence with the juvenile court. Based on the results of the parent search, the Agency additionally mailed letters to potential relatives of alleged father, including his mother Be.P., sister R.P., and brother Ro.P. The Agency also left a voicemail for alleged father's mother but did not receive a call back.

At the September 7, 2022 jurisdiction and disposition hearing, alleged father again did not appear. The juvenile court found the Agency had diligently tried to contact him and notice him of hearings.

In mid-September 2022, Mother reported that alleged father's mother received the Agency's letters but did not want to be involved. The Agency did not receive any other responses from any of alleged father's relatives. It also obtained A.P.'s birth certificate, which did not list a father.

At the contested jurisdiction and disposition hearing on October 17, 2022, the juvenile court found ICWA did not apply. Alleged father again did not appear.

The Agency reached maternal uncle M.M. in January 2022, and he denied having any Native American ancestry. The same month, the Agency filed a declaration of due diligence outlining its attempts to reach alleged father, including trying to reach some of his relatives. Based upon the Agency's search efforts, the juvenile court ordered notice dispensed to alleged father.

At the April 17, 2023 contested section 366.26 hearing, the juvenile court found ICWA did not apply, terminated parental rights, and ordered adoption as A.P.'s permanent plan.

Mother appeals that order but challenges only the juvenile court's finding that ICWA does not apply.

DISCUSSION

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or

4

may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W., supra*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).) The first duty—that of conducting an initial inquiry[2]—requires the Agency to "ask all involved persons whether the child may be an Indian child." (*D.S., supra,* at p. 1052.) "If [the] child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307," this duty includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . ." (§ 224.2, subd. (b).) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of [ICWA]].)

---

[2] Because the Agency's initial inquiry is the only duty at issue on appeal, we limit our discussion accordingly. The remaining duties required by section 224.2 are as follows. "[I]f th[e] initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e).) . . . [I]f that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S., supra*, 46 Cal.App.5th, at p. 1052.)

Here, Mother challenges only the sufficiency of the Agency's initial inquiry. She contends section 224.2, subdivision (b) required the Agency to question alleged father's relatives—who Mother asserts qualify as A.P.'s "extended family members"—about A.P.'s possible Native American ancestry, and that the Agency failed to do so.[3] We disagree.

Mother's argument is belied by ICWA's statutory definition of "parent." Under ICWA, a "parent" is defined as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom." (25 U.S.C. § 1903(9); see also § 1903(4), italics added [defining "Indian child" as "any unmarried person who is . . . eligible for membership in an Indian tribe and is the *biological child of a member of an Indian tribe*"].) The statute expressly excludes from the definition of "parent" an "unwed father where paternity has not been acknowledged or established." (*Id.*, § 1903(9); see also *In re C.A.* (2018) 24 Cal.App.5th 511, 520 (*C.A.*) [definition of parent does not include an unwed father where paternity has not been acknowledged or established]; *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 (*E.G.*) ["[A]bsent a biological connection, the child cannot claim Indian heritage through the alleged father."].) "[B]ecause . . . ICWA does not provide a standard for the acknowledgment or establishment of paternity, courts have resolved the issue under state law." (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708.) Thus, in

[3]     In her opening brief, Mother additionally alleged that the Agency failed to question maternal uncle Ru.E. about A.P.'s possible Native American ancestry. However, in her reply brief, Mother conceded to misreading the record. Our review of the record indicates the Agency questioned Ru.E. about his Native American ancestry and that, although he disclosed discovering a small percentage of Native American ancestry through a DNA test, he did not know the name of the tribe or of any family associated with a reservation. Accordingly, we accept Mother's concession on this point.

6

California, an alleged father[4] may acknowledge or establish paternity through blood testing (Fam. Code, § 7551) or by voluntarily signing a declaration of paternity filed with the child's birth certificate (Fam. Code, § 7571, subd. (a)).  (*In re Daniel M., supra,* at pp. 708–709.)

In support of her contention that alleged father was a "parent" under ICWA, Mother points to (1) an Agency report indicating that she and maternal grandmother identified alleged father as A.P.'s father during the Agency's interviews and (2) the juvenile court's order adopting the Agency's recommended findings that alleged father was A.P.'s father and that his parental rights be terminated.  We cannot conclude from this record evidence that alleged father satisfied the definition of a "parent" under ICWA.  (See 25 U.S.C. § 1903(9); see also *E.G., supra,* 170 Cal.App.4th at p. 1533 ["Until biological paternity is established, an alleged father's claims of Indian heritage do not trigger any ICWA notice requirement because, absent a biological connection, the child cannot claim Indian heritage through the alleged father."]; (*C.A., supra,* 24 Cal.App.5th at pp. 514–515 [ICWA notice to tribes identified by presumed father not required where father was presumed by marriage but was not the child's biological or adoptive father.].)

On the contrary, the record shows that alleged father did not take *any* steps to acknowledge or establish his status as A.P.'s father—he never appeared in the dependency case, and there is no indication that he ever took a paternity test or signed a declaration of paternity filed with A.P.'s birth certificate.  Moreover, despite the Agency's efforts to discuss the dependency proceeding with alleged father, he repeatedly expressed skepticism that he

---

4      An "alleged father" is a person who may be the father of a child but whose biological paternity or presumed parent status have not been established.  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15.)

was A.P.'s father and voiced his disinterest in being involved. Indeed, when the Agency attempted to locate alleged father's physical address and location, including by contacting some of his relatives about his whereabouts, alleged father could not be located. Accordingly, we conclude alleged father was not A.P.'s "parent" for purposes of ICWA, and thus, the Agency did not have a duty to conduct ICWA inquiries with alleged father's relatives.[5]

In short, because the Agency satisfied its duty of initial inquiry under section 224.2, subdivision (b), we see no error and affirm.

---

[5] The Agency contends in the alternative that, even if alleged father was a "parent" under ICWA, the Agency had no duty to conduct ICWA inquiries with his family members because A.P. was not taken under temporary custody pursuant to section 306. (See *In re Robert F.* (2023) 90 Cal.App.5th 492, 504 (*Robert F.*) review granted July 26, 2023, S279743 [duty to inquire of extended family members under section 224.2, subdivision (b) is triggered only when child is taken into temporary emergency custody under section 306]; cf. *In re Delila D.* (2023) 93 Cal.App.5th 953, 962 [disagreeing with *Robert F.* and concluding "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home"].) Because we conclude alleged father did not meet the definition of a "parent" under ICWA, we need not evaluate the Agency's alternative argument, which will ultimately be resolved by the Supreme Court.

## DISPOSITION

The April 17, 2023 order is affirmed.

KELETY, J.

WE CONCUR:

DATO, Acting P. J.

RUBIN, J.